**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
TRACY BROGAN,

<table>
<tr><td>Plaintiff,</td><td><u>**COMPLAINT**</u></td></tr>
<tr><td>- against -</td><td></td></tr>
<tr><td></td><td>**PLAINTIFF DEMANDS**</td></tr>
<tr><td>MACY'S INC.</td><td>**A TRIAL BY JURY**</td></tr>
<tr><td>Defendant.</td><td></td></tr>
</table>

--------------------------------------------------------X

Plaintiff, TRACY BROGAN, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law,

PLLC, hereby complains of the Defendant, MACY'S INC. ("MACY'S"), upon information and

belief, as follows:

<u>**NATURE OF THE CASE**</u>

1.     Plaintiff brings this lawsuit pursuant to the Age Discrimination Employment Act, Title 29

United States Code §§ 621, et seq.; (the "ADEA"), the New York State Human Rights

Law, New York State Executive Law §§ 296 *et seq.* ("NYSHRL"), New York City Human

Rights Law, New York City Administrative Code §§ 8-107 *et seq.* ("NYCHRL"),  and

seeking damages to redress the injuries she has suffered as a result of being discriminated

and retaliated against on the basis of her age.

<u>**JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES**</u>

2.     This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 29 U.S.C.

§626(c)(1) and 28 U.S.C. §§ 1331 and 1343.

3.     This Court has supplemental jurisdiction over Plaintiff's claims under the NYSHRL and

NYCHRL pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as the acts complained of occurred within the Southern District of New York.

5.     Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), on July 13, 2023, within 300 days of her discriminatory termination, (b) receiving a Notice of Right to Sue from the EEOC on November 13, 2023, (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC, and (d) contemporaneously with the filing of this Complaint, mailing copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as **"Exhibit A;"** a copy of the transmittal letter to the NYCCHR *et ano.* is annexed hereto as **"Exhibit B."**

## PARTIES

6.     Plaintiff, Tracy Brogan ("Plaintiff"), is a resident of New York County, New York.

7.     At all relevant times, Plaintiff was over 40 years of age.

8.     Defendant Macy's Inc.("Macy's") is a holding company that operates department stores chains, including Macy's, Bloomingdale's, and Blue Mercury.

9.     Macy's is a foreign business corporation licensed to do business in New York and is headquartered at its flagship store, located at 151 West 34th Street, New York, NY 10001.

10.    Macy's is one of the largest retail chains in the United States.

11.    At all relevant times, Plaintiff worked remotely, but worked was based in the Herald Square corporate offices.

## MATERIAL FACTS

**Plaintiff's Exemplary Performance at Macy's**

12.   Plaintiff is a 62-year-old woman.

13.   Plaintiff is a well-accomplished designer with four decades of experience in the fashion industry and has created designs for Calvin Klein, Kenneth Cole, Michael Kors, Vera Wang, Tommy Hilfiger, Tahari, Air Jordan, Nine West, Tumi, and countless other brands.

14.   Plaintiff has worked with renowned designers Carlos Falchi, Anna Sui, and Matthew Harris.

15.   Plaintiff began working for Macy's in August 2017 as a Designer for the Private Brand Handbags collection.

16.   In 2017, Plaintiff was promoted to Design Director, in recognition for her hard work and dedication to Macy's.

17.   As Design Director, Plaintiff designed private brand handbags and small leather goods and gave design direction to vendor partners.

18.   In 2022, Plaintiff oversaw the growth of Macy's brands I.N.C. and Giani Bermini by over 9% from the prior year.

19.   Plaintiff's team maximized growth and profitability by reducing stock keeping units and increasing product markups by 75%.

20.   Plaintiff's designs were well-received and have been wore by actresses on the red carpet and on Emmy-awarding programs.

21.   For over five years, Plaintiff excelled in her role and was regularly praised by her colleagues for her designs, leadership, and business acumen.

22.   In January 2022, Plaintiff received an annual performance review of "Exceeds Expectations" from her supervisor Christopher Steinmannn, VP, Merchandising, who exclaimed: "Tracy

brings an infectious passion to her work! She has created clear identities across our private brands while constantly finding ways to inject/test new ideas. She has her finger on the pulse of the business and the market and is always bringing new inspiration to the table. She has embraced our category ambitions and delivered Nylon packages that have surpassed expectations."

23. From March 2022 to June 2022, Emily Erusha Hillique ("Hillique") served as Plaintiff's supervisor.

**Plaintiff Is Subjected To Age Discrimination and Harassment**

24. In June 2022, Andrea Avigne, Senior Director of Macy's Private Brands ("Avigne"), became Plaintiff's supervisor, replacing Hillique.

25. Avigne had the authority to hire, fire, or affect the terms and condition of Plaintiff's employment, or to otherwise influence the decisionmaker of the same.

26. Almost immediately, Avigne was hostile to Plaintiff and began harassing her and providing unjustified scrutiny of her work.

27. During meetings, Avigne would aggressively shut down Plaintiff when she contributed her own design ideas.

28. Avigne also tried to make working conditions uncomfortable for Plaintiff.

29. Macy's had a hybrid work environment, and its policy dictated that supervisors provide employees with one-month advance notice so employees could coordinate their travel accordingly, as many were working out of state.

30. Yet after Avigne became Plaintiff's supervisor, she suggested that Plaintiff come into the office three days a week, often with last-minute notice.

31. Avigne was aware that Plaintiff was temporarily living in Pennsylvania, as her Manhattan apartment was under construction for mold and asbestos removal.

32. Plaintiff explained how difficult it was for her to work in-office, as her roundtrip commute was 7-9 hours long as she was living in Pennsylvania.

33. Plaintiff complained that she was being treated differently than her colleagues, and Avigne callously responded, "That's life."

34. Avigne did not treat other directors, all of whom were younger than Plaintiff, with such hostility and allowed other employees to work from home and assisted with setting up their presentation, as Avigne regularly worked in-person.

35. Despite this, Plaintiff would commute to the New York office when Avigne provided her with adequate time for travel.

36. In addition to making her work conditions difficult, Avigne began sabotaging her work and career. Avigne did not sabotage her colleagues' work, all of whom were younger than Plaintiff.

37. Avigne sidelined Plaintiff by not inviting her to meetings essential for her work performance, and after such meetings, Avigne would mockingly suggest, in sum and substance: "You should have been there."

38. In August 2022, Avigne repeatedly rejected Plaintiff's designs in advance of management presentation meetings.

39. Each time Plaintiff asked for feedback as to what could be improved, but. Avigne refused to provide any guidance.

40. Avigne told Plaintiff that she could no longer have discussions with buyers before the designs were fully developed.

41. Avigne's order was a clear diminution in duties, as for years, Plaintiff regularly discussed designs with buyers.

42. In fact, her supervisor Steinmann had praised Plaintiff for her ability to develop close relationships with buyers.

43. In October 2022, Plaintiff went on a business trip to Europe with Avigne, Arielle Gogh, Design Director ("Gogh"), and Abby Feldman, Design Director, Jewelry ("Feldman")

44. Upon information and belief, Avigne, Gogh, and Feldman are under the age of 40.

45. During the trip, the women were inside a taxi when a glaring example of Avigne's bias and animus toward Plaintiff, as a 60-year-old woman, was openly expressed.

46. In the taxi, Avigne spoke mockingly about her previous boss and said, in sum and substance, that she was "an embarrassment" as she was "one of those older women who don't have a life, wear all black thinking they are relevant and now she can only get a job at Chico's."

47. Avigne then proceeded to show her coworkers a video of her ex-boss.

48. Gogh repeatedly ask Avigne to show the video again, as Plaintiff's supervisor and coworkers cruelly denigrate the woman, because of her age.

49. Gogh and Avigne howled with laughter each time they watched the video.

50. Plaintiff, who was decades older than these thirty-somethings, was unable to escape the taxi and felt humiliated and powerless to stop the harassment.

51. Later, during a group dinner in Paris on October 21, 2022, Gogh noted that Erin Chapin, RTW CAD Director, at Macy's ("Chapin"), was being laid off that day and said, in sum and substance: "It's probably because she's older. Maybe she'll retire."

52. As Plaintiff sat there silently, Gogh, Avigne and Feldman began looking up Chapin's social media profiles on their phones and staring at photos of her, attempting to figure out her age.

53. Upon information and belief, Chapin was in her 40's.

54. Upon information and belief, Chapin was replaced by a younger employee.

55. Plaintiff continued working under great duress as the age discriminatory harassment and conduct continued.

56. Plaintiff's anxiousness increased when another Macy's employee, Suzanne Anderson, VP of Design, a woman in her 50's, laid off with no apparent justification.

57. In late autumn of 2023, Avigne began a campaign to terminate Plaintiff.

58. For instance, when Plaintiff set up her samples for a Fall-2023 line review with the Buying and Product Development teams. Plaintiff received great feedback from colleagues who praised Plaintiff's designs.

59. However, afterwards, Avigne called Plaintiff in for a private meeting, and asked, in sum and substance, "Why are you struggling with this line?" and "The products did not live up to the DNA of what INC should be."

60. Avigne then walked Plaintiff to the open showroom, and in front of Plaintiff's Buying and Product Development colleagues, Avigne claimed that she had never seen the samples before that day.

61. Avigne's statement was blatantly false, as she had attended a product line review weeks earlier without comment and had approved the samples again earlier that day.

62. Plaintiff felt embarrassed and humiliated, as Avigne had openly critiqued in front of her colleagues, diminishing her authority and reputation.

63. Throughout November and December 2022, Avigne repeatedly rejected Plaintiff's designs for Q4/Holiday Development 2022 without explanation or direction.

64.   In response, Plaintiff put an incredible amount of effort in, regularly working late nights and weekends redoing her designs.

65.   Plaintiff's efforts were ultimately futile, as Avigne rejected any new designs without explanation, direction, or further clarification.

66.   On November 16, 2022, Jamie Anderson, a buyer, texted Plaintiff after hearing of Avigne's repeated rejections of Plaintiff's designs, stated: "You know your stuff. You have to believe you didn't get bad at your job overnight. This is not you."

67.   During this same time period, on several occasions, Avigne falsely claimed that Plaintiff was providing confusing directions to employees.

68.   Plaintiff had not done so, and when she mentioned Avigne's accusations to her co-workers, they were incredulous, as they had never shared any such concerns to Avigne.

69.   In January 2023, Avigne met with Plaintiff, other directors, and their direct reports to recount a recent business trip she took with Emily to visit two Macy's stores in Miami.

70.   Avigne alleged that the store managers had claimed that the private brand handbags collections were not selling well again singling out Plaintiff to humiliate her during a work meeting.

71.   After the meeting, Plaintiff asked Jamie Anderson, Handbag Buyer, in sum and substance, "Why are handbag sales down in Miami if we're up in sales everywhere else?"

72.   Anderson quickly pulled up the sales numbers for both stores, which revealed that the handbag sales were not down, but had increased by over 10% from the year prior.

**Plaintiff Reports Differential Treatment and Is Subjected To Heightened Scrutiny**

73.   Upset by what Plaintiff told her about Avigne's conduct, Anderson immediately reported the information to her supervisor Chris Steinmann, VP, Merchandising ("Steinmann").

74. Later that week, Steinmann met with Plaintiff and confirmed that her handbag sales were up and that Avigne had lied about Plaintiff's performance.

75. Steinman told Plaintiff that he had called the store managers who confirmed that these conversations "never happened" and that they were pleased with her collections' sales performance.

76. Steinmann was furious and reported Avigne's harassing behavior to Julie Walsh, SVP, General Manager.

77. When Steinmann revealed that he had reported Avigne, Plaintiff begged him not to speak with Avigne, as she feared that she would continue to retaliate against her.

78. Shortly thereafter, Plaintiff received a formal warning that was filled with nonsensical critiques of Plaintiff's leadership, creative vision, and communication.

79. Plaintiff rebutted each one of Defendant's alleged issues and protested: **"**Every performance review from each of my past three People leaders has been stellar. While there is a new Design structure and process that states they promote "a safe space of trust and freedom to explore and even make mistakes," my recent experiences with my current manager have resulted in my having to function in a climate of non-support with inconsistent feedback. I am left mystified as to why I am being unfairly targeted -particularly in light of the years-long consistent accolades I've received with respect to my work."

80. Three months later, on March 24, 2023, Plaintiff received a final warning, as Avigne alleged that Plaintiff's performance had not improved.

81. On March 27, 2023, Plaintiff was terminated for poor performance.

82. Defendant's reason was pretextual, as in March 2023, Plaintiff's main brand I.N.C. was in the top 5 selling handbag brands at Macy's.

83.   In 2021 to 2022, Plaintiff's work led to double digit sales increases in sales.

84.   Avigne's discrimination was widely known, and co-workers regularly discussed how Avigne mistreated Plaintiff, but Macy's failed to intervene.

**Plaintiff's Bags Are Regularly Promoted Post-Termination – Proving Pretext**

85.   In Plaintiff's Final Performance / Conduct Warning, Avigne stated that Plaintiff "failed to understand and adapt to the forward vision of the brand," – a clear age-based comment falsely suggesting that Plaintiff is behind on trends.

86.   In its EEOC Position Statement, Macy's claims it terminated Plaintiff for "poor work performance."

87.   Specifically, Macy's alleges that Plaintiff's handbag designs "were inconsistent with brand DNA, failed to coordinate with a specified product line, and did not align with the target market."

88.   Macy's claims that Plaintiff failed "to demonstrate a clear vision" in her product designs.

89.   Macy's goes on to allege that Plaintiff "demonstrated that she simply did not understand brand vision and routinely presented ideas that failed to align with brand DNA."

90.   In other words, Macy's claims the basis of her termination was that she was not designing handbags that were marketable or profitable.

91.   Macy's claim is pretext as is clearly evidenced by the fact that since Plaintiff's termination to present, Plaintiff's handbags are being extensively promoted and highlighted in Macy's advertising.

92.   For instance, Plaintiff's handbags were featured in TV commercials that ran throughout the holiday season, including in a Black Friday TV commercial that ran during the 2023 Macy's Thanksgiving Day Parade. (Exhibit C).

93. Plaintiff's handbags were also prominently displayed in email promotional campaigns on May 11, 2023, October 08, 2023, November 01, 2023, November 22, 2023, and November 24, 2023. (Exhibit C).

94. In fact, during the week of November 27, 2023, Plaintiff's handbags were featured almost daily in email marketings – an impressive feat as this is the peak season for holiday marketing.

95. Plaintiff's handbags were also showcased in several window displays at the Herald Square location on September 24, 2023, as part of Macy's "On 34th Street" campaign. (Exhibit C).

96. Furthermore, Plaintiff's handbags were also shown in a YouTube promotional video on August 17, 2023, and a livestream on September 21, 2023. (Exhibit C).

97. Upon information and belief, Macy's has run other promotional and advertising campaigns that have utilized Plaintiff's handbags and designs.

98. The instances cited above and reflected in Exhibit C are only a sampling of evidence showing Plaintiff's bags continue to be used and prominently displayed in promotional campaigns and advertisements.

**Macy's Has A History of Discriminating Against Employees Based On Their Age**

99. Upon information and belief, Macy's has a longstanding history of terminating employees over 40 years old due to assumptions that older workers are not as knowledgeable of current fashion trends as their younger colleagues.

100. Throughout Plaintiff's employment, several older colleagues were terminated and replaced by younger workers.

101. In Fall 2022, Suzanne Anderson, VP, Design, RTW, was laid off.

102. At all relevant times, Anderson was in her 50's.

103.  Anderson had worked in the fashion industry for over 3 decades.

104.  Anderson had been the face of Macy's Mission Everyone and was used in promotional materials promoting the company's alleged commitment to diversity, equity and inclusion.

105.  Anderson was replaced by Narda Chan, a younger employee.

106.  In October 2022, Erin Chapin, RTW CAD Director, was laid off.

107.  At all relevant times, Chapin was in her 40's.

108.  Chapin was replaced by a younger employee.

109.  In December 2022, Michelle Israel, Senior Vice President – General Business Manager was laid off.

110.  At all relevant times, Israel was in her mid-50's.

111.  Israel had worked in the fashion industry for over two decades.

112.  Upon information and belief, in July 2023, Macy's hired Plaintiff's replacement.

113.  Upon information and belief, Plaintiff's replacement was younger than her.

114.  Upon information and belief, her replacement is a woman in her 30's.

## **Harm to Plaintiff**

115.  As a result of the discriminatory conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entailed.

116.  Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

117.  Plaintiff felt offended, disturbed, and humiliated by Defendant's unlawful age-based discriminatory conduct.

118.   As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of the Court.

119.   Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

## AS A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER THE ADEA

120.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

121.   The ADEA, 29 U.S.C. § 623 (a), provides that it shall be unlawful for an employer:

> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

122.   Defendant engaged in unlawful employment practices prohibited by the ADEA by discriminating against Plaintiff and terminating her, in whole or in part, based upon her age.

## AS A SECOND CAUSE OF ACTION
## RETALIATION UNDER THE ADEA

123.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

124.   The ADEA, 29 U.S.C. §623(d) provides that it shall be unlawful for an employer:

> "to discriminate against any of his employees . . . because such individual… has opposed any practice made unlawful by this section…"

125.   Defendant engaged in unlawful employment practices prohibited by the ADEA by retaliating against Plaintiff with respect to the terms, conditions, or privileges of her employment, because she made complaints of age discrimination.

## AS A THIRD CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYSHRL

126.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this Complaint.

127.   New York State Executive Law § Executive Law § 296, 1) provides that: It shall be an

unlawful discriminatory practice:

> (a) For an employer… because of an individual's **age…** to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

> (h)For an employer… to subject any individual to harassment because of an individual's…. **age…**or because the individual has opposed any practices forbidden under this article or because the individual has filed a complaint, testified or assisted in any proceeding under this article, **regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims**. Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories…. **Nothing in this section shall imply that an employee must demonstrate the existence of an individual to whom the employee's treatment must be compared.**

128.   Defendant engaged in an unlawful discriminatory practices by discriminating against and

terminating the Plaintiff because of her age.

## AS A FOURTH CAUSE OF ACTION
## RETALIATION UNDER THE NYSHRL

129.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

Complaint.

130.    New York State Executive Law § 296(1)(e) provides that, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

131.    Defendant engaged in unlawful employment practices prohibited by the NYSHRL by retaliating against Plaintiff with respect to the terms, conditions, or privileges of her employment, because she made complaints of age discrimination.

**AS A FIFTH CAUSE OF ACTION**
**DISCRIMNATION UNDER THE NYCHRL**

132.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

133.    The New York City Administrative Code §8-107(1) provides that: "[i]t shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived…age….to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

134.    Defendant engaged in unlawful discriminatory practices by discriminating against Plaintiff and terminating her because of her age.

**AS A SIXTH CAUSE OF ACTION**
**RETALIATION UNDER THE NYCHRL**

135.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

136. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

137. Defendant engaged in unlawful discriminatory practices in violation of New York City Administrative Code § 8-107(7) by retaliating against Plaintiff and constructively discharging him because she complained of discrimination.

## JURY DEMAND

138. Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHISEFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by the ADEA, the NYSHRL and the NYCHRL, in that Defendant discriminated and retaliated against Plaintiff on the basis of her age:

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff liquidated damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

E. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful employment practices.

Dated:  New York, New York

December 08, 2023

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By:       _____/s/_____
Michelle A. Caiola, Esq.
Jonathan Goldhirsch, Esq.
*Attorneys for the Plaintiff*
Phillips & Associates, PLLC
45 Broadway, Suite 430
New York, New York 10006
T: (212) 248 – 7431
F: (212) 901 – 2107
mcaiola@tpglaws.com
jgoldhirsch@tpglaws.com